```
UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| ANDREW RINGEL, | |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| -against- | |
| | **ECF CASE** |
| NEW YORK CITY DEPARTMENT OF EDUCATION; NAIYMA MOORE-ALLEN, PRINCIPAL OF THE WAVERLY SCHOOL FOR THE ARTS; MIATHERESA PATE, COMMUNITY SUPERINTENDENT FOR DISTRICT 23, | 19 CV 2374 (ENV)(JO) |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff ANDREW RINGEL, by his attorneys, GLASS & HOGROGIAN LLP, as and for his Complaint against Defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Andrew Ringel brings this action against the New York City Department of Education ("NYCDOE"), as well as his former Principal, Naiyma Moore-Allen, and Miatheresa Pate, Community Superintendent for District 23, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), for discrimination, retaliation, and hostile work environment due to his religion (Judaism) and race/color (White).

2. Plaintiff seeks compensatory damages and punitive damages to the extent allowable by law, and other appropriate legal and equitable relief pursuant to federal, state, and city law.

1

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 as this matter involves Title VII.

4. This action's venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the discriminatory, retaliatory and hostile work environment took place in this District and Plaintiff resides in this District.

5. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6. This Court has supplemental jurisdiction over Plaintiff's state and city law claims under 28 U.S.C. § 1367(a).

7. On November 7, 2018, Plaintiff served a Written Verified Notice of Claim on Defendants regarding his state and city law claims.

8. Plaintiff received a Right to Sue letter from the Equal Employment Opportunity Commission dated April 4, 2019, which is annexed as Exhibit A.

## PARTIES

9. Plaintiff is a resident of the County of Kings and the State of New York.

10. At all times relevant herein, Plaintiff was and is an English teacher with the New York City Department of Education (NYCDOE).

11. At all times relevant herein, Defendant NYCDOE (formerly New York City Board of Education) is a public school district within the State of New York.

12. At all times relevant herein, Defendant Naiyma Moore-Allen was the Principal of the Waverly School of the Arts in Brooklyn.

13. At all times relevant herein, Defendant Miatheresa Pate was the Community Superintendent of District 23 in Brooklyn.

## STATEMENT OF FACTS

14. Plaintiff began his employment with Defendant NYCDOE in January 2016. Specifically, he was assigned to teach first grade general education at P.S. 195.

15. At the end of the 2015-16 school year, he received an overall rating of "Satisfactory."

16. Plaintiff continued to teach at P.S. 195 during the 2016-17 school year, for which he received an overall rating of "Effective."

17. At the start of the 2017-2018 school year, Plaintiff transferred to P.S. 156, the Waverly School for the Arts ("the School").

18. Plaintiff received an overall rating of "Effective" for the 2017-18 school year,

19. Throughout the 2017-2018 school year, a student, J.J., disparaged Plaintiff's religion (Judaism), cursed at Plaintiff, and threatened Plaintiff's physical well-being.

20. Student J.J. continued to harass and abuse Plaintiff virtually every school day during the 2017-18 school year. Plaintiff continuously reported this behavior to his administration, who took no responsive or corrective action against the student.

21. On or about November 21, 2017, during a fire drill, J.J. tried to run away from Plaintiff's class. To ensure J.J.'s safety, Plaintiff escorted J.J. by the hand out of the building. During this process, J.J. yelled at Plaintiff multiple times and stated words such as "fuck you," and "fuck you Jew." J.J also tried to bend Plaintiff's fingers backwards. Plaintiff subsequently reported this incident verbally to his principal and Ana Haynes, the Dean at his school.

Plaintiff later reported this incident in writing on December 4, 2017 after J.J. continued to act out in his class.

22. On or about November 22, 2017, J.J. kicked another student. When the student asked not to be kicked, J.J. replied, "shut up faggot." Plaintiff then escorted J.J. to the office of Dean Haynes. J.J. proceeded to call Plaintiff "bitch ass Jew" and "stinky breath" while being escorted to Ms. Haynes' office. Plaintiff verbally reported this to the administration, but received no response.

23. Plaintiff formally complained about J.J.'s behavior and the administration's failure to adequately address it and support Plaintiff via email on December 4, 2017.

24. On or about December 12, 2017, while students were walking up the first floor stairwell, J.J. hit six students on the line. J.J. was thereafter removed from the classroom by school safety. At about 11:45 a.m., J.J. returned to Plaintiff's classroom and sat down for about five minutes before getting up and walking around the room in a disruptive fashion. During this time, J.J. screamed that Plaintiff was a "stinky ass nigger" and "fucking stinky Jew." Plaintiff escorted J.J. out of the room, who proceed to throw two pencils at Plaintiff. In response to J.J.'s actions, the School's administration removed him from Plaintiff's classroom, but only for that day. Notably, Plaintiff later received a letter to file for this incident. Plaintiff reported this incident to Dean Haynes. No support or remedial action was taken by the School's administration.

25. On or about January 11, 2018, J.J. refused to stay in the science lab. When Plaintiff asked him to return to the classroom, J.J. called him "white boy" and "nigger."

26. On or about February 12, 2018, Defendants falsely accused Plaintiff of corporal punishment towards J.J. This matter was referred to the NYCDOE's Office of Special

Investigations ("OSI"). As a result of this investigation, Plaintiff was removed from his teaching duties. However, on February 26, 2018, Plaintiff was reinstated.

27. On or about February 26, 2018, Plaintiff met with his principal, Naiyma Moore-Allen, along with his union Chapter Leader, Ms. Mavis Yon, to discuss an accusation of corporal punishment against Plaintiff. During this meeting, Plaintiff informed Principal Moore-Allen that J.J.'s actions have caused him to be concerned about his safety as well as for his students' safety. He also informed Principal Moore-Allen that J.J. frequently used racial slurs and disparaged his religion. Principal Allen did nothing.

28. On or about March 16, 2018, J.J. stated to Plaintiff, after receiving instructions about a class assignment, "I will punch you in the face, Mr. Ringel fuck you." Later that day, Plaintiff informed Principal Moore-Allen about J.J.'s behavior. No response was taken by the administration.

29. On March 26, 2018, J.J. punched another student while the students were playing Ultimate Frisbee. Plaintiff reported this incident to Principal Moore-Allen and Dean Haynes via email. He received no response.

30. On or about March 27, 2018, Principal Moore-Allen accused Plaintiff of not following proper protocol after a pet snake was lost in his classroom. Plaintiff was not and is not aware of what the proper protocol was for such a situation. The matter was referred to OSI.

31. On or about March 28, 2018, Defendant Moore-Allen once again falsely accused Plaintiff of two incidents of corporal punishment with regard to J.J. These allegations were referred to OSI. Plaintiff ultimately received a letter to file for these allegations on April 9, 2018.

32. On or about March 28, 2018, Plaintiff once again informed Principal Moore-Allen that J.J. continued to assault other students as well as Plaintiff, and that J.J. repeatedly disparaged his religion by calling him a "fucking Jew" and a "dirty stinking Jew." Again, Principal Moore-Allen and the administration refused to take any action to support Plaintiff.

33. On or about March 29, 2018, Plaintiff received a letter to his file falsely accusing him of corporal punishment.

34. On or about April 9, 2018, Plaintiff received a second letter to his file falsely accusing him of corporal punishment.

35. On or about April 10, 2018, Plaintiff received a third letter to his file falsely accusing him of corporal punishment.

36. On or about April 10, 2018, Plaintiff informed Principal Moore-Allen that J.J. continued to threaten him with physical harm, that J.J. threw books and pencils at him, and that J.J. continued to use racial epithets and make disparaging remarks about his religion.

37. On April 13, 2018, Plaintiff reported the April 10 pencil-throwing incident via email to Principal Moore-Allen. Once again, the Principal did nothing.

38. On or about April 18, 2018, after Plaintiff asked J.J. to stop talking out of turn in class, J.J. made a motion with his fingers of shooting Plaintiff with a gun. Plaintiff reported this behavior to the New York Police Department ("NYPD") 73rd Precinct, where he met with a Detective Allen, who informed Plaintiff that he would come to the school to investigate.

39. On or about April 19, 2018, Plaintiff attended a meeting with Detective Allen, J.J.'s mother, and Assistant Principal Ayisha Lamont-Agard to discuss J.J.'s threating behavior on April 18, 2018. During this meeting, J.J.'s mother stated that J.J. hates Plaintiff.

Despite this meeting, the School administration did not remove J.J. from Plaintiff's classroom and provided no additional support to Plaintiff.

40. On or about April 25, 2018, Plaintiff filed four grievances against his principal with respect to each allegation of corporal punishment that was lodged against him. Specifically, Plaintiff alleged that his administration engaged in faulty and deficient investigations regarding the allegations against him.

41. The very next day, on April 26, 2018, Plaintiff received two 48-Hour Notices regarding a disciplinary meeting that was scheduled for Monday April 30, 2018.

42. On or about May 3, 2018, Plaintiff filed a safety grievance in regard to J.J.'s behavior. Specifically, J.J. had approached Plaintiff's classroom during Plaintiff's lunch break, at which time students are supposed to be in the cafeteria. The classroom was locked. Ms. Anne Walker and Plaintiff were sitting inside. J.J. proceeded to bang and kick the door. At 1:30 p.m., Ms. Walker and Plaintiff opened the door to leave. J.J. asked Plaintiff if he could come into the room to get his backpack. Plaintiff told him he could not, as students are required to stay within the lunch room during lunch per school regulations, and that he should walk with them to pick up the class. J.J. told Plaintiff to "shut the fuck up" and "I wish you were dead." Plaintiff notified Principal Moore-Allen and Assistant Principal Ms. Lamont-Agard of the incident via email. Neither responded nor took any action to address J.J.'s actions.

43. Following the incident, Plaintiff informed Detective Allen of the incident.

44. On May 7, 2018, Plaintiff attended a meeting with Detective Allen and Principal Moore-Allen. For reasons unknown to Plaintiff, Ms. Moore-Allen screamed at Plaintiff and stated, "You will not escape this." Plaintiff responded by telling Principal Moore-Allen that he felt harassed and unsupported by the administration.

45. On or about May 7, 2018, while in class, Plaintiff asked J.J. to sit down multiple times. In response, J.J. said, "shut the fuck up, you are not my teacher." Plaintiff called security, who escorted J.J. out of class. Later that day, after J.J. had returned to the classroom, on the way back from the cafeteria after lunch J.J. refused to get on the class line. When Plaintiff asked him to join the rest of the class, J.J. stated, "shut up, you are not my teacher." A few minutes later, J.J. punched another student in the arm. Plaintiff told J.J. that he could not hit other children. J.J. responded, "shut the fuck up before I beat you up." Principal Moore-Allen was notified via email about this incident. Once again, Principal Moore-Allen did nothing.

46. On or about May 8, 2018, Plaintiff submitted a Student Removal Form to have J.J. removed from his class. Later that day, Plaintiff received a disciplinary letter to file in regards to the incident in which a pet snake went missing. Plaintiff also received a separate letter falsely accusing him of corporal punishment.

47. On or about September 5, 2018, Plaintiff received a letter informing him that he was being reassigned to 121 Livingston Street in Brooklyn pending a discontinuance.

48. On or about September 27, 2018, Plaintiff went to P.S. 156 to review his personnel file in the principal's office. As Plaintiff reviewed his personnel file, he noticed a copy of a retainer agreement between himself and his attorney that he had signed. As this was a confidential and privileged document, Plaintiff requested that Principal Moore-Allen give him the copy of the retainer agreement contained in the personnel file or destroy it, as it was not a school record. When Principal Moore-Allen refused, Plaintiff took the document out of his personnel file. In response, Principal Moore-Allen directed the School Safety Agents to detain Plaintiff and prevent him from leaving the School's premises. For at least one hour,

between approximately 3:30 p.m. and 4:30 p.m., Defendants unlawfully detained Plaintiff by directing at least two public safety agents to block the doors to the principal's office and not allow Plaintiff to leave.

49. On or about October 11, 2018, Plaintiff received a letter Discontinuance of Probationary Service with Defendant NYCDOE effective October 4, 2018. Notably, Plaintiff worked until October 11, 2018 yet was not paid since October 1, 2018.

50. On November 7, 2018, Plaintiff dual-filed a complaint with the New York State Division of Human Rights ("DHR") and the Equal Employment Opportunity Commission ("EEOC").

51. Plaintiff received a Notice of Right to Sue letter from the U.S. Equal Employment Opportunity Commission dated April 4, 2019. A copy of Plaintiff's Right to Sue letter is annexed hereto.

52. On May 6, 2019, Plaintiff had an appeal hearing of his Discontinuance of Probationary Service with the DOE Chancellor's Office of Appeals and Reviews.

53. On May 13, 2019, Plaintiff received a letter from Dr. Miatheresa Pate, Community Superintendent for District 23, that, based on a report from the Chancellor, she was reaffirming Defendants' previous action which resulted in his Discontinuance of Probationary Service.

54. On June 26, 2019, Plaintiff received a letter from Assistant Principal Ayesha LaMont-Agard informing him that a new investigation into an allegation of corporal punishment had been opened against him.

# FIRST CAUSE OF ACTION
## (Discrimination And Retaliation Against Plaintiff In Violation Of Title VII)

55. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

56. Defendants have discriminated and retaliated against Plaintiff based on race and religious discrimination by creating a hostile work environment and terminating Plaintiff's employment.

57. Defendants created a constant and pervasive hostile work environment by failing to take action against J.J.'s threatening and disparaging behavior.

58. Defendants retaliated against Plaintiff by issuing him disciplinary letters to file, less-than-effective observation reports, substantiating false allegations of misconduct, and terminating Plaintiff's employment.

59. Following the filing of Plaintiff's federal lawsuit, Defendants initiated new disciplinary action in the form of an investigation into a false allegation of corporal punishment, despite the fact that Plaintiff is no longer employed by Defendants.

60. As a proximate result of Defendants' discriminatory and retaliatory actions against Plaintiff, Plaintiff has suffered and continues to suffer a loss of monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, and damage to his professional reputation and potential loss of employment, in an amount to be determined at trial.

# SECOND CAUSE OF ACTION

**(Discrimination And Retaliation Against Plaintiff In Violation Of New York State Human Rights Law)**

61. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

62. While acting under color of State Law, Defendants have discriminated and retaliated against Plaintiff based on race and religious discrimination under the New York State Human Rights law by creating a hostile work environment and terminating Plaintiff's employment.

63. Defendants created a constant and pervasive hostile work environment by failing to take action against J.J.'s threatening and disparaging behavior.

64. Defendants retaliated against Plaintiff by issuing him disciplinary letters to file, less-than-effective observation reports, substantiating false allegations of misconduct, and terminating Plaintiff's employment.

65. Following the filing of Plaintiff's federal lawsuit, Defendants initiated new disciplinary action in the form of an investigation into a false allegation of corporal punishment, despite the fact that Plaintiff is no longer employed by Defendants.

66. As a proximate result of Defendants' discriminatory and retaliatory actions against Plaintiff, Plaintiff has suffered and continues to suffer a loss of monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, and damage to his professional reputation and potential loss of employment, in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**(Discrimination And Retaliation Against Plaintiff In Violation Of New York City Human Rights Law)**

67. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

68. While acting under color of City Law, Defendants have discriminated and retaliated against Plaintiff based on race and religious discrimination under the New York City Human Rights Law by creating a hostile work environment and terminating Plaintiff's employment.

69. Defendants created a constant and pervasive hostile work environment by failing to take action against J.J.'s threatening and disparaging behavior.

70. Defendants retaliated against Plaintiff by issuing him disciplinary letters to file, less-than-effective observation reports, substantiating false allegations of misconduct, and terminating Plaintiff's employment.

71. Following the filing of Plaintiff's federal lawsuit, Defendants initiated new disciplinary action in the form of an investigation into a false allegation of corporal punishment, despite the fact that Plaintiff is no longer employed by Defendants.

72. As a proximate result of Defendants' discriminatory and retaliatory actions against Plaintiff, Plaintiff has suffered and continues to suffer a loss of monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, and damage to his professional reputation and potential loss of employment, in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
(False Arrest/False Imprisonment Pursuant To 42 U.S.C. Section 1983)

73. Plaintiff repeats and re-alleges the allegations set forth in the proceeding paragraphs, as if fully set forth herein.

74. On September 27, 2018, Defendants detained and imprisoned Plaintiff within the meaning of the Fourth Amendment to the United States Constitution.

75. These defendants lacked probable cause and authority to detain and imprison Plaintiff. Plaintiff did not engage in any conduct that warranted his arrest, detention, and/or imprisonment.

76. As a result of his false arrest and imprisonment by Defendants, Plaintiff has suffered psychological injuries.

## JURY DEMAND

77. Plaintiff hereby demands a trial by Jury.

## PRAYER/DEMAND FOR RELIEF

WHEREFORE, Plaintiff demands judgment in its favor against Defendants as follows:

    a. Judgment declaring that Defendants acts violated Plaintiff's rights as secured by federal, state and city law prohibiting discrimination and retaliation in employment;

    b. Compensatory damages to compensate Plaintiff for economic loss, damage to name, profession, career and reputation, pain and suffering, emotional distress and mental anguish, embarrassment, indignity, and dislocation, in an amount to be determined at trial;

    d. Punitive damages against one or all of the Defendants;

    e. Statutory attorneys' fees, interest, costs, and disbursements, and

f.  For such other and further legal, equitable or other relief as the Court deems just and proper.

DATED: New York, New York
October 1, 2019

>GLASS & HOGROGIAN LLP
>85 Broad Street
>18th Floor - WeWork
>New York, NY 10004
>(212) 537-6859

By: _____
JORDAN F. HARLOW, ESQ.