19 CV 2374 (DG) (TAM)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ANDREW RINGEL,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
NAIMA MOORE-ALLEN, and MIATHERESA PATE

Defendants.

## DEFENDANTS' OBJECTIONS TO THE FEBRUARY 4, 2022 REPORT AND RECOMMENDATION

**GEORGIA M. PESTANA**
*Corporation Counsel of the City of New York*
*Attorney for New York City*
*100 Church Street*
*New York, NY  10007*

*Of Counsel: Jasmine Harris*
*Tel:  (212) 356-4076*
*Matter #: 2019-031089*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ........................................................................................................... 2

POINT I

PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM IS DEFICIENT AS A MATTER OF LAW. ................................................... 3

A. Plaintiff Did Not Establish That He Experienced an Objectively Severe and Pervasive Hostile Work Environment Under Title VII and the SHRL ....................................... 3

B. The Record Shows that Defendants Took Appropriate Remedial Actions ............................................. 6

C. Plaintiff Did Not Establish a Hostile Work Environment Claim Under the New York City Human Rights Law ................................................................ 9

POINT II

PLAINTIFF'S RETALIATION CLAIM FAILS BECAUSE HE HAS NOT SHOWN THAT DEFENDANTS' PROFFERED REASON WAS PRETEXTUAL. ................................................................. 10

A. Plaintiff Did Not Establish a Retaliation Claim Under Title VII or New York State Human Rights Law ............................................................................ 10

B. Plaintiff Did Not Establish a Hostile Work Environment Under the New York City Human Rights Law ................................................................ 15

CONCLUSION ....................................................................................................... 16

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                        **<u>Pages</u>**

Adams v. Montefiore Med. Ctr.,
  No. 15-cv-5082(KBF), 2017 U.S. Dist. LEXIS 163847
  (S.D.N.Y. Oct. 3, 2017)...................................................................................................15

Barton v. Warren Cty.,
  2020 U.S. Dist. LEXIS 141128 (N.D.N.Y. Aug. 7, 2020)......................................................8

Berger-Rothberg v. City of New York,
  803 F.Supp.2d 155 (E.D.N.Y. 2011)..............................................................................5, 6, 7

Brennan v. Metro. Opera Ass'n, Inc.,
  192 F.3d 310 (2d Cir. 1999) ...........................................................................................5, 10

Caridad v. Metro-North Commuter R.R.,
  191 F.3d 283 (2d Cir. 1999) ...............................................................................................8

Carlton v. Mystic Transp., Inc.,
  202 F.3d 129 (2d Cir. 2000) ..............................................................................................11

Cooper v. Wyeth Ayerst Lederle,
  106 F.Supp.2d 479 (S.D.N.Y. 2000)....................................................................................8

Davies v. New York City Dep't of Educ.,
  563 F. App'x 818 (2d Cir. 2014) .........................................................................................14

Distasio v.Perkin Elmer Corp.,
  157 F.3d 55 (2d Cir. 1998) ..................................................................................................8

Dodd v. City Univ. of N.Y.,
  489 F.Supp.3d 219 (S.D.N.Y. 2020)...................................................................................14

Evarts v. Quinnipiac Univ.,
  No. 15-cv-1509, 2018 U.S. Dist. LEXIS 172572
  (D. Conn. Oct. 4, 2018) ....................................................................................................15

Galimore v. City Univ. of N.Y. Bronx Cmty. Coll.,
  641 F. Supp. 2d 269 (S.D.N.Y. 2009)............................................................................13-14

Gonzalez v. Beth Israel Med. Ctr.,
  262 F. Supp. 2d 342 (S.D.N.Y. 2003)...............................................................................6, 9

Grillo v. N.Y. City Transit Auth.,
  291 F.3d 231 (2d Cir. 2002) .................................................................................................5

**Cases**                                                                         **Pages**

Guity v. Uniondale Union Free Sch. Dist.,
    15-5693, 2017 U.S. Dist. LEXIS 27542
    (E.D.N.Y. Feb. 23, 2017) ..................................................................................4

Ladepo v. United Cerebral Palsy of N.Y. City, Inc.,
    No. 15-cv-7026 (VSB), 2018 U.S. Dist.
    LEXIS 155793 (S.D.N.Y. Sept. 12, 2018) ...............................................9

Naumovski v. Binghamton Univ.,
    No. 3:11-cv-1097, 2018 U.S. Dist. LEXIS 22939
    (N.D.N.Y. Apr. 17, 2018).........................................................................6

Philippe v. Santander Bank, N.A.,
    No. 15-cv-2918, 2018 U.S. Dist. LEXIS 55443
    (E.D.N.Y. March 31, 2018) ................................................................10-11

Raspardo v. Carlone,
    770 F.3d 97 (2d. Cir. 2014) ......................................................................4

Roge v. NYP Holdings Inc.,
    257 F.3d 164 (2d Cir 2001) ...................................................................11

Rumsey v. Northeast Health, Inc.,
    89 F.Supp.3d 316 (N.D.N.Y. 2015) ........................................................14

Springs v. City of New York,
    No. 17-cv-451, 2019 U.S. Dist. LEXIS 55094
    (S.D.N.Y. Mar. 29, 2019)..........................................................................9

Telesford v. New York City Department of Education,
    No. 16-cv-819, 2021 U.S. Dist. LEXIS
    26242 (E.D.N.Y. Jan. 6, 2021) ...............................................................13

United States v. Male Juvenile,
    121 F.3d 34 (2d Cir. 1997) .......................................................................2

Warren v. N. Shore Univ. Hosp. at Forest Hills,
    No. 03-cv-0019, 2006 U.S. Dist. LEXIS 73302
    (E.D.N.Y. Sept. 29, 2006) .......................................................................11

Williams v. New York Hous. Auth.,
    61 A.D.3d 62 (1st Dep't 2009) .................................................................9

Wolf v. Time Warner, Inc.,
    548 Fed. Appx. 693 (2d Cir. 2013) ........................................................15

**Statutes**                                                                                           **Pages**

28 U.S.C. § 636(b)(1)..............................................................................................................2

42 U.S.C. §1983...................................................................................................................1

Fed. R. Civ. P. 75(b)(2)........................................................................................................1

**Other Authorities**

Chancellor's Regulation A-420 ...........................................................................................12

## PRELIMINARY STATEMENT

Defendants New York City Department of Education, Naiyma Moore-Allen, and Miatheresa Pate, (collectively "Defendants") respectfully submit the following objections to the February 4, 2022 Report and Recommendation ("R&R") of the Honorable Taryn A. Merkl pursuant to Federal Rule of Civil Procedure 75(b)(2). The R&R recommended that summary judgment be granted as to Plaintiff's claims of discrimination and §1983, but that Plaintiff's hostile work environment and retaliation claims be allowed to proceed. Defendants now respectfully object to Judge Merkl's denial of summary judgment as to Plaintiff's hostile work environment and retaliation claims. For the reasons set forth herein, Defendants respectfully request that the Court reject the recommendations that summary judgment be denied, and grant Defendants' motion for summary judgment in its entirety.

The R&R denied summary judgment on Plaintiff's hostile work environment claims because it found that reasonable minds could differ as to whether the student J.J.'s actions were motivated by discriminatory animus, and whether Plaintiff's work environment was sufficiently hostile to impact his employment conditions. First, Plaintiff failed to establish that the treatment was objectively severe and pervasive. Plaintiff's responsibilities as a special education teacher included managing difficult students, yet Plaintiff failed to establish that J.J.'s behavior exceeded what a reasonable special education teacher would expect in his situation. Second, Plaintiff failed to establish that J.J.'s conduct was *because of* his religion and race, as the record shows that J.J. used slurs against students and teachers of various backgrounds. Third, Plaintiff did not establish that J.J.'s behavior interfered with his job performance.

Moreover, to succeed on a student-against-teacher hostile work environment claim, Plaintiff must show that the school failed to take appropriate remedial action. In the instant action, the school engaged in a wide variety of remedial acts to address J.J.'s behavior,

including meetings with J.J.'s guardian, school counselor, an NYPD detective, and school administrators, implementing a personalized education and counseling plan, reporting J.J.'s behavior, and imposing penalties such as suspension. The school even offered Plaintiff the opportunity to transfer schools, but Plaintiff turn them down. Plaintiff's subjective belief that the school did not do enough is simply insufficient to defeat a summary judgment motion, and hold Defendants' liable for student J.J.'s behavior.

The R&R denied summary judgment on Plaintiff's retaliation claims, concluding that "despite the record evidence supporting Defendants' contention that the corporal punishment allegations motivated Ringel's discontinuance, the Court cannot conclude as a matter of law at this stage that Ringel would have been discontinued in the absence of his complaints about J.J." R&R at 43. Plaintiff's retaliation claims fail Plaintiff has not, and cannot, establish that Defendants' legitimate, non-retaliatory reason for his discontinuance is pretextual, and the real reason was that he complained about J.J.'s behavior. The points relied upon by the R&R in finding a question of fact as to pretext are either blatantly contradicted by the record, or insufficient to establish evidence of pretext in a summary judgment motion.

As such, and for the reasons set forth set below and in the Defendants' motion for summary judgment, Defendants respectfully object to the portions of the R&R that recommend denial of Defendants' motion for summary judgment.

## ARGUMENT

Where a party makes specific and timely objections to a magistrate's findings, the court must apply a de novo standard of review.  United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); 28 U.S.C. § 636(b)(1).  The court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. Id. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions."

Id.  For the reasons set forth below, defendants respectfully request that the Court reject the recommendations that summary judgment be denied for plaintiff's hostile work environment and retaliation claims, and, instead, grant defendants' motion for summary judgment in its entirety.

**POINT I**

**PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM IS DEFICIENT <u>AS A MATTER OF LAW.</u>**

**A.    Plaintiff Did Not Establish That He Experienced an Objectively Severe and Pervasive Hostile Work Environment Under Title VII and the SHRL**

The R&R concluded that given the length of "name-calling, physical altercations, and threats," a reasonable jury could find that Plaintiff experienced an objectively severe hostile work environment. R&R at 26. But, in holding, the R&R did not take into account (1) Plaintiff's unique role as a special education teacher, who is trained to work with disturbed children; (2) the fact that J.J. used slurs against teachers and students of various races and religions; and (3) there is no evidence that J.J.'s behavior unreasonably interfered with Plaintiff's job performance.

First,  the R&R's emphasis on Plaintiff's "physical altercations" with J.J as evidentiary support for his hostile work environment claim, is misplaced. See R&R at 26. This emphasis ignores that Plaintiff was terminated for this exact kind of behavior: corporal punishment against students. See Defendants' Memorandum in Support of Their Motion for Summary Judgment, Dkt. No. 47-1, at 7-8, 23 ("Defs' SJM MOL"); R&R at 11-15 (outlining the numerous corporal punishment investigations against Plaintiff). The R&R recognized the severity of the allegations against Plaintiff, finding "[Plaintiff's] well-documented disciplinary record and the serious, substantiated allegations of corporal punishment (including one incident in which a student was taken to the hospital), sufficient to shift the burden." R&R at 40.

Plaintiff's inappropriate and aggressive conduct with students should not be permitted to be used by him as evidence that *he* experienced a hostile work environment.

Second, the R&R did not sufficiently consider Plaintiff's position as a special education teacher, equipped with a B.A. in psychology and childhood education and a master's degree in special education, whose job description involves working with students with behavior issues. See Plaintiff's Deposition, Dkt. No. 47-5, Exh. "B" at 12-13. While Plaintiff may have personally perceived J.J.'s behavior as abusive, he fails to provide any evidence that the behavior exceeded what a reasonable special education teacher would expect in his place. Raspardo v. Carlone, 770 F.3d 97, 114 (2d. Cir. 2014). The Court must consider the totality of the circumstances from the perspective of a "reasonable person in the plaintiff's position, considering all the circumstances [including] the social context in which particular behavior occurs and is experienced by its target." Guity v. Uniondale Union Free Sch. Dist., 15-5693, 2017 U.S. Dist. LEXIS 27542 at *56 (E.D.N.Y. Feb. 23, 2017). In the instant matter, Plaintiff, a special education teacher, was insulted by a special education fourth grader, who was known for his behavioral issues with teachers and students alike[1]. See Defs' 56.1, Dkt. No. 47-2, ¶¶ 105-107. The R&R did not address that managing students like J.J. was part of Plaintiff's job, and a reasonable special education teacher would not conflate insults by a student with known behavioral issues with a hostile work environment. Because Plaintiff does not show that J.J.'s behavior exceeded what a reasonable special education teacher would expect, he fails to establish a prima facie case of hostile work environment. See Raspardo v. Carlone, 770 F.3d 97, 114 (2d Cir. 2014); Defs' SJM MOL, No. 47-1, at 13-14.

---

[1] At Plaintiff's deposition, Plaintiff acknowledged that J.J. got "racial" with his co-teacher Ms. Walker, calling her a "fat N word" and "fat bitch." Plaintiff's Deposition, Dkt. No. 47-5, Exh. "B" at 134.

Third, the R&R found that Plaintiff could establish that student J.J. treated him a certain way *because of* his protected characteristic, an essential element in a hostile work environment claim. Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999) ("A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class."). This conclusion, however, ignores the bigger picture of Plaintiff's student's behavior at P.S. 156. While J.J.'s language towards Plaintiff was admittedly shocking and offensive, Plaintiff was not singled out in this behavior. IJ.J. was a troubled, special education 4th grader described as "erratic" and "out of control," who cursed at teachers and students alike. See Ann Walker Deposition, Dkt. No. 47-27, Exh. "Y"  at 9, 10, 14; See Defs' 56.1, Dkt. No. 47-2, at 17. When asked if he knew of other teachers who had similar problems with J.J., Plaintiff responded "[e]verybody." Plaintiff's Deposition, Dkt. No. 47-5, Exh. "B" at 106. Because the record shows that J.J. indiscriminately cursed and fought with many teachers, both Jewish and non-Jewish, the record simply does not support the conclusion that J.J. targeted Plaintiff *because* of his religion. Grillo v. N.Y. City Transit Auth., 291 F.3d 231, 235 (2d Cir. 2002) ("Even if [plaintiff's] highly dubious claim that he was unfairly singled out….[he] has done little more than cite to his alleged mistreatment and ask the court to conclude that it must have been related to his race.").

Fourth, the R&R states that "Defendants [] argue that because it was just one behaviorally challenged student harassing Ringel, instead of a classroom of students…Ringel's claims must fail." R&R at 26. This is a misunderstanding of Defendants' argument. Defendants' cited Berger-Rothberg to acknowledge that New York Federal Courts have not addressed the instant issue of a single student harassing multiple staff members. See Defs' SJM MOL, Dkt. No. 47-1, at 11. Defendants' then continued to establish case law to show that where a student

5

indiscriminately insulted teachers, this did not create an inference of discrimination behind the conduct. Id. at 11-12.

Finally, there is simply no evidence for the R&R's conclusion that J.J.'s conduct "interfered with Ringel's job." R&R at 27. Putting aside that dealing with students like J.J. was Plaintiff's job, as demonstrated in Defendants' motion for summary judgment, Plaintiff received the same rating when he was in the classroom with J.J. as he did in the year when he had no interaction with J.J.. See Defs' 56.1, Dkt. No. 47-2, ℙ17. Thus, Plaintiff has not shown that the harassment unreasonably interfered with his work. Naumovski v. Binghamton Univ., No. 3:11-cv-1097, 2018 U.S. Dist. LEXIS 22939, at *51-52 (N.D.N.Y. Apr. 17, 2018).

**B.     The Record Shows that Defendants Took Appropriate Remedial Actions**

The R&R erroneously held that the court could not issue a recommendation on whether Defendants failed to take appropriate remedial actions. R&R at 28-30. "To prove a hostile work environment claim involving student-on-teacher harassment, a plaintiff must show first that a hostile environment existed and second that the school board either provided no reasonable avenue of complaint or knew of the harassment and *failed to take appropriate remedial action*." Berger-Rothberg v. City of New York, 803 F.Supp.2d 155, 164 (E.D.N.Y. 2011). Citing Berger-Rothberg, the R&R declined to make a judgment on the question of whether Defendants took an appropriate remedial action, stating that this "is a question of fact, not law." R&R at 29. This conclusion ignores that Courts have granted summary judgment on a hostile work environment claim where there is evidence that the defendant made prompt, good-faith efforts to resolve the underlying complaints. See e.g. Gonzalez v. Beth Israel Med. Ctr., 262 F. Supp. 2d 342, 355 (S.D.N.Y. 2003) (granting summary judgment for the defendant because the employer's remedial action to a harassment complaint was prompt, professional, and punished the harasser). In the instant action, Defendants took extensive measures to address J.J.'s

behavior, including (1) meetings with J.J. and Plaintiff and a variety of school administrators to discuss J.J.'s behavior; (2) meetings with J.J's guardian; (3) meetings with a school counselor; (4) meetings with NYPD Detective Allen; (5) providing J.J. with mandated counseling pursuant to an Individual Education Plan ("IEP"); (6) entering multiple reports involving J.J. into the Online Occurrence Reporting System ("OORS"), including reports that mention J.J.'s threats and name-calling; (7) working with the school social worker to create an individualized, reward-oriented behavior chart for J.J.; (7) placing J.J. in the SAVE room; and (8) a two-day suspension in response to J.J.'s aggression. See Student Suspension, Dkt. No. 47-36, Exh. "HH;" Miller-Bovain Deposition Transcript, Dkt. No. 47-13, Exh. "J" at 29; Defendant Moore-Allen Deposition, Dkt. No. 47-8, Exh. "E" at 58; Plaintiff's Deposition, Dkt. No. 47-5, Exh. "B" at 37.

Furthermore, Berger-Rothberg is distinguishable from the instant action. The Court in Berger-Rothberg found genuine issues of fact precluding summary judgment because there was "sufficient evidence in the record such that a jury could reasonably find that school officials failed to take appropriate remedial action." Berger-Rothberg, 803 F.Supp.2d at 165. Specifically, it was alleged that not only did the school wait months to intervene, but its response "cooled" when the harassment intensified. See id. Given the extensive intervention efforts made by Defendants in the instant action, no reasonably jury could find that Defendants failed to take appropriate remedial action. In fact, in an attempt to remedy the discord between J.J. and Plaintiff, Defendants offered Plaintiff the opportunity to transfer schools with a hardship transfer.[2] R&R at 29. But, instead of taking the opportunity to remove himself from the allegedly

---

[2] A hardship transfer is available for teachers who would like to change schools due to travel hardships, medical reasons, or safety concerns from school-related assaults. See Instructions for Completing the Application for Hardship Transfer, New York City Dep't of Educ. Dep't of Human Resources, https://infohubstg.nyced.org/docs/default-source/default-document-library/applicationforhardshiptransfer2018. Defendants also explored the possibility of moving

hostile work environment, Plaintiff declined the transfer, describing it as a procedure "usually for somebody who is pregnant and they need, like, a loser school, or somebody who got into a car accident." R&R at 29; Plaintiff Deposition Transcript, Dkt. No. 47-5, Exh. "B" at 118.

Significantly, Courts have held that defendants cannot be held liable for the environment created by students' behavior where the school takes reasonable steps to remedy it. Distasio v.Perkin Elmer Corp., 157 F.3d 55, 65 (2d Cir. 1998) ("liability will not attach unless the [employer] failed to take reasonable steps to eliminate the harassment."). In examining whether the employer's response was reasonable, courts may consider "the gravity of the harm being inflicted upon the plaintiff, the nature of the employer's responses in light of the employer's resources, and the nature of the work environment." Barton v. Warren Cty., 2020 U.S. Dist. LEXIS 141128 at *25 (N.D.N.Y. Aug. 7, 2020). Furthermore, "[a]n employer need not prove success in preventing harassing behavior in order to remonstrate that it exercised reasonable care in preventing and correcting" harassing conduct. Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 295 (2d Cir. 1999). In their response to Plaintiff's complaints, the record shows that Defendants attempted a plethora of disciplinary actions to address J.J.'s attitude. Cooper v. Wyeth Ayerst Lederle, 106 F.Supp.2d 479, 495 (S.D.N.Y. 2000) ("Title VII simply requires that the remedial action taken be reasonably calculated to end the [harassment]."). But at the end of the day, Plaintiff—a trained special education and interventionist teacher—was being insulted by a disturbed, special education 4th grader who cursed and fought with students and teachers alike. Given the extensive and varied ways Defendants responded to J.J.'s behavior, no reasonable jury could find that Defendants failed to

J.J. to the other special education class at the school; however, this was ultimately not feasible because J.J. had a conflict with a student in the other class, and the school did not want to switch the students because it is school's policy not to "uproot other students unnecessarily." Transcript of Defendant Moore-Allen, Dkt. No. 47-8, Exh. "E" at 180-81.

take appropriate remedial action, and Plaintiff's hostile work environment claim should be dismissed. Gonzalez v. Beth Israel Med. Ctr., 262 F. Supp. 2d 342, 355 (S.D.N.Y. 2003).

Accordingly, Defendants respectfully request the Court reject the recommendations that summary judgment be denied on plaintiff's Title VII and SHRL hostile work environment claims.

**C.    Plaintiff Did Not Establish a Hostile Work Environment Claim Under the New York City Human Rights Law**

A claim of a hostile work environment under the New York City Human Rights Law ("CHRL") requires a more liberal analysis than the federal and state standard, summary judgment is still available where the alleged conduct in question could only be reasonably interpreted as "no more than petty slights or trivial inconveniences." Williams v. New York Hous. Auth., 61 A.D.3d 62, 79 (1st Dep't 2009). Even under this more liberal standard, Plaintiff still fails to establish a claim of hostile work environment. As explained in Point I.A above, Plaintiff cannot show that J.J. harassed Plaintiff "because of" his protected characteristics, as J.J. used racial slurs and threats against teachers and students of various races and religions. Additionally, Plaintiff cannot show that liability for this student's conduct should be imputed to the school, because the record shows that Defendants took immediate and appropriate action to correct J.J.'s behavior. See supra Part I.B; Springs v. City of New York, No. 17-cv-451, 2019 U.S. Dist. LEXIS 55094, at *43 (S.D.N.Y. Mar. 29, 2019). Finally, in considering NYCHRL claim, the "overall context in which the challenged conduct occurs cannot be ignored." Ladepo v. United Cerebral Palsy of N.Y. City, Inc., No. 15-cv-7026 (VSB), 2018 U.S. Dist. LEXIS 155793, at *11 (S.D.N.Y. Sept. 12, 2018). The record establishes that J.J. barraged teachers and student alike with foul language and physical violence. See Defs' 56.1, Dkt. No. 47-2, ¶¶ 105-107. To put it plainly, dealing with this kind of student *was Plaintiff's job.* Thus, Defendants

respectfully request that the Court reject the recommendation that summary judgment be denied as to Plaintiff's CHRL hostile work environment claim.

## POINT II

### PLAINTIFF'S RETALIATION CLAIM FAILS BECAUSE HE HAS NOT SHOWN THAT DEFENDANTS' PROFFERED REASON WAS PRETEXTUAL.

**A.      Plaintiff Did Not Establish a Retaliation Claim Under Title VII or New York State Human Rights Law**

The R&R also denied summary judgment on Plaintiff's retaliation claim finding that "Plaintiff raised a triable issue as to Defendants' motivations for his discontinuance." R&R at 43. Plaintiff alleges that Defendants terminated his employment with the DOE after he complained to Defendant Moore-Allen, Dean Haynes, and Assistant Principal LaMont-Agard throughout the 2017-2018 school year. Id. at 6. In coming to this conclusion, the R&R relied on four details in the record, none of which sustain Plaintiff's burden of presenting "evidence from which a fact-finder could reasonably conclude that the [employer's] reason was pretextual." Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 317 (2d Cir. 1999). To create a jury issue on the question of pretext, a plaintiff must produce evidence of "weakness, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." Philippe v. Santander Bank, N.A., No. 15-cv-2918, 2018 U.S. Dist. LEXIS 55443, at *39 (E.D.N.Y. March 31, 2018) (citations omitted). For the reasons explained below, none of the details relied on by the R&R establish evidence that establish a triable issue of pretext.

First, the R&R found that there was "potential inconsistency" in Defendant Moore-Allen's testimony as to the reasons for Plaintiff's termination that raised a triable issue as to Defendants' motivations behind Plaintiff's discontinuance. R&R at 43. To rely on inconsistencies as evidence of pretext, the inconsistencies must be material. Philippe., 2018 U.S.

Dist. LEXIS 55443, at *39 (E.D.N.Y. March 31, 2018). The record does not contain any evidence of material inconsistencies. Indeed, when asked why Plaintiff was terminated, Defendant Moore-Allen consistently referred to the allegations of corporal punishment. See generally Defendant Moore-Allen Deposition, Dkt. No. 47-8, Exh. "E." For example, when asked, "And what was the reason that you recommend Mr. Ringel for discontinuance?", Defendant Moore-Allen responded, "[h]is substantiated corporal punishment cases."[3] Id. at 55. This reasoning was repeated over and over again throughout the deposition. At one point, Defendant Moore-Allen explained that Plaintiff was terminated "due to his behavior." Id. at 85. At another point she included more details, describing the reason for termination as "the series of incidents that occurred with him putting his hands on children." Id. at 85. Several pages later, Defendant Moore-Allen stated that the recommendation for Plaintiff's termination was appropriate due to "the egregious nature of the behavior." Id. at 89. Defendant Moore-Allen's responses present a consistent explanation for the school's action, and no reasonable jury could interpret these slight variations as inconsistencies that raise an issue of fact with regard to Defendants' non-retaliatory reason for termination. Roge v. NYP Holdings Inc., 257 F.3d 164, 170 (2d Cir. 2001) (finding that plaintiff failed to offer evidence of pretext because defendant's justifications were "variations, if that, on the same theme rather than separate inconsistent justifications."); Warren v. N. Shore Univ. Hosp. at Forest Hills, No. 03-cv-0019, 2006 U.S. Dist. LEXIS 73302, at *10 (E.D.N.Y. Sept. 29, 2006) (granting summary judgment where defendant's multiple reasons for hiring plaintiff were "not conflicting, but complementary"); cf. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 137 (2d Cir. 2000) (finding issues of fact where

---

[3] Defendants acknowledge that at the time the emails concerning Plaintiff's reassignment and discontinuance were exchanged, the investigations into the allegations were still ongoing. However, by that time, there were allegations of multiple instances of corporal punishment pending against Plaintiff. Dfts' 56.1, Dkt. No. 47-2, ¶¶ 23, 33.

the employer "expressly stated" to the EEOC that job performance was not a factor in termination and later asserted plaintiff was "terminated in part because of poor performance).

Next, the R&R erroneously relied on the fact that two out of the three DOE Chancellor's Committee members recommended that the penalty of termination be withdrawn as a basis for denying summary judgment on plaintiff's retaliation claim. R&R at 43; Chancellor's Committee Report, Dkt. No. 47-9, Exh. "F." The R&R's reliance on these committee members' recommendations is misplaced for several reasons.

First, there is nothing in the Chancellor's Committee Report that indicates that the panel had any knowledge of Plaintiff's protected activities. Chancellor's Committee Report, Dkt. No. 47-9, Exh. "F." These members came to this conclusion not because there was any indication of retaliatory motive, but because they believed discontinuance to be "too severe," namely because the Administration lacked aggression in removing J.J. from Plaintiff's classroom. Id. As explained above, J.J. could not be transferred to the other special education class because he had a conflict with another student in that class, and Plaintiff himself declined to transfer schools. See supra Part I.A.ii, fn. 3.

Second, the Chairperson of the Chancellor's Committee concluded that Plaintiff's termination should be upheld. Chancellor's Committee Report, Dkt. No. 47-9, Exh. "F." Moreover, the Chairperson's decision was ultimately affirmed by JoAnn C. Rabot, Director of the Office of Appeals and Reviews, in light of Plaintiff's "number of violations of Chancellor's Regulation A-420."[4] Id. Other individuals, who there is no evidence had knowledge of the protected activities, have agreed that Plaintiff's termination should be upheld. See e.g. Letter to

---

[4] The Chancellor's Regulation A-420 defines and prohibits the use of corporal punishment against students. See Regulation of the Chancellor, PUPIL BEHAVIOR AND DISCIPLINE – CORPORAL PUNISHMENT, NYC DOE (Nov. 28, 2018) https://www.schools.nyc.gov/docs/default-source/default-document-library/a-420-english

Plaintiff, dated Oct. 4, 2018, Dkt. No. 47-32, Exh. "DD;" see also Transcript of the Deposition of

Dr. Miatheresa Pate (Community Superintendent for District 23), Dkt. No. 47-29, at 45-47, Exh.

"AA."

   Finally, the fact that two members of the Committee—individuals who never

observed Plaintiff in the classroom—would have imposed a lesser penalty is not evidence of an

implausibility or contradiction that raises an inference of pretext. A court in the Eastern District

recently granted summary judgment in a similar case.  In Telesford v. New York City

Department of Education, the plaintiff attempted to argue that DOE's non-discriminatory reason

for his termination was pretextual because 1 out of the 3 panel members of the Chancellor's

Committee found that termination was inappropriate. No. 16-cv-819, 2021 U.S. Dist. LEXIS

26242, at *12 (E.D.N.Y. Jan. 6, 2021). The Court, however, held that an "inferior

decisionmaker's belief that an employee should be retained does not render suspect his

superior's concluding otherwise. That is especially so here, where the committee fractured 2-

1…and [the principal]—who worked most closely with [plaintiff]—recommended that his tenure

be denied." Id. Thus, the Chancellor's Committee report is not evidence of pretext.

   Third, in recommending denial of summary judgment the R&R erroneously relied

on the "intersecting timelines of Ringel's participation in protected activity and the chain of

disciplinary actions he faced," when it held that plaintiff had presented sufficient evidence that

Defendants' proffered reason for his termination was pretextual.  R&R at 43. Assuming that

Plaintiff's informal complaints about J.J.'s behavior constituted protected activity, the fact that

Plaintiff complained before he *repeatedly* engaged in corporal punishment simply cannot create a

triable question of fact.  Courts have consistently held that temporal proximity is insufficient to

show pretext and to avoid summary judgment. Galimore v. City Univ. of N.Y. Bronx Cmty.

Coll., 641 F. Supp. 2d 269, 289 (S.D.N.Y. 2009) ("mere temporal proximity, though sufficient to establish a prima facie case of retaliation, is legally insufficient to avoid summary judgment at the pretext stage of analysis."); Davies v. New York City Dep't of Educ., 563 F. App'x 818, 820 (2d Cir. 2014); Rumsey v. Northeast Health, Inc., 89 F.Supp.3d 316 (N.D.N.Y. 2015) (finding temporal proximity "particularly insufficient" to show pretext where although there was a short time period between the employee's protected activity and termination, the employee had a history of problems pre-dating the protected activity and had committed serious misconduct post-dating the protected activity). Moreover, the R&R's conclusion creates a problematic dilemma for school administrators regarding teachers who at some point have complained about problematic student's harassment. The threat of a retaliation lawsuit could have a chilling effect on schools acting on simultaneously credible allegations that the teacher engaged in problematic conduct.

Finally, the R&R cites to "potential inconsistencies in Defendants' proffered reasons for the timing of the letters to file" as evidence that a rational trier of fact could find in Plaintiff's favor that Defendants engaged in retaliation. R&R at 45. Entirely absent from the R&R is any citation to the record or explanation of where these inconsistencies are found. Indeed, a review of the record, shows that Defendants have consistent explanations as to the timing of the letters to file. When asked why there was a delay with certain letters to file or investigations, Defendant Moore-Allen repeatedly explained that there was a backlog of cases. See Deposition of Defendant Moore-Allen, Dkt. No. 47-8, Exh. "E" at 153, 170. At no point did she give any other explanation for the delay. Moreover, evidence of a delay, especially when that delay is justified by a legitimate, non-retaliatory reason, is insufficient to create an inference of retaliation. See Dodd v. City Univ. of N.Y., 489 F.Supp.3d 219 (S.D.N.Y. 2020) (delays in

resolving grievances was not evidence that supported a retaliatory motive); Evarts v. Quinnipiac Univ., No. 15-cv-1509, 2018 U.S. Dist. LEXIS 172572, at *24 (D. Conn. Oct. 4, 2018) (defendant was entitled to summary judgment because plaintiff could not point to any facts to prove that his employer's delay was the product of discriminatory intent).

As explained in more detail in Defendants' Memorandum of Law in Support of Summary Judgment, Plaintiff's inappropriate behavior—namely, multiple instances of corporal punishment involving four different students—was the reason for his termination. See Defs' 56.1, Dkt. No. 47-2, ¶¶23, 44, 49, 55, 61, 66. Plaintiff has not presented any evidence that Defendants' explanation for his termination is pretextual and the actual motivation was retaliatory. Thus, Plaintiff's Title VII and SHRL retaliation claim should be dismissed.

**B.    Plaintiff Did Not Establish a Hostile Work Environment Under the New York City Human Rights Law**

To establish a CHRL retaliation claim, Plaintiff must demonstrate that he took an action "opposing [his] employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." Wolf v. Time Warner, Inc., 548 Fed. Appx. 693, 696 (2d Cir. 2013). Once Defendants set forth a legitimate, non-retaliatory reason for their conduct, Plaintiff still must show that the proffered reason is pretextual or motivated at least in part by discrimination. Adams v. Montefiore Med. Ctr., No. 15-cv-5082(KBF), 2017 U.S. Dist. LEXIS 163847, at *18-19 (S.D.N.Y. Oct. 3, 2017). The R&R denied summary judgment on Plaintiff's CHRL retaliation claim, relying on their finding that Plaintiff "demonstrated triable issues of fact as to whether Defendants' non-retaliatory reasons for his discontinuance and letters to file were pretextual." R&R at 47. As explained in Point II.A above, the R&R erroneously found that there was a triable issue of fact to preclude summary

15

judgment because Plaintiff failed to present any evidence to show that Defendants' non-retaliatory reasons were pretextual.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court reject the February 4, 2022 Report and Recommendation to the extent it recommended the denial of summary judgment for Plaintiff's claims of hostile work environment and retaliation, grant Defendants' motion for summary judgment, dismiss the Complaint in its entirety, and grant Defendants costs and disbursements, together with such further relief as the Court deems just and proper.

Dated:      New York, New York
            February 17, 2022

**GEORGIA M. PESTANA**
Corporation Counsel of the
  City of New York
Attorney for Defendants
100 Church Street, Room 2-109D
New York, New York 10007-2601
(212) 356-4076
jaharris@law.nyc.gov

By:      _Jasmine Harris_
         _____
         Jasmine Harris
         Assistant Corporation Counsel

16